UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Qi Gao<br>5844 Buckhannon Street<br>Dublin, OH 43016,<br><br>  Plaintiff,<br><br>v.<br><br>Kaman Cusimano, LLC<br>c/o K&C Service Corporation<br>50 Public Square, Suite 2000<br>Cleveland, OH 44113<br><br>  Defendant. | Case No.  2:20-cv-5<br><br>District Judge<br><br>Magistrate Judge<br><br>**<u>JURY DEMAND ENDORSED HEREIN</u>** |

**COMPLAINT FOR MONEY DAMAGES AND OTHER RELIEF**

The following allegations are based upon Plaintiff Qi Gao's ("Ms. Gao") personal knowledge, the investigation of counsel, and information and belief.  Ms. Gao, through counsel, alleges as follows:

**I. JURISDICTION**

1. This Court has jurisdiction for the First Count pursuant to the FDCPA, 15 U.S.C. § 1692k(d) and 28 U.S.C. 1331 and 1337.

2. This Court has jurisdiction for the Second Count pursuant to 28 USC § 1367 as those claims form part of the same case or controversy as the First Count.

3. This Court has personal jurisdiction over the Defendant because the Defendant transacts business within this District, the debt was incurred within this District, and the property which was the subject of the debt is located within this District. *International Shoe v. Washington*, 326 U.S. 310 (1945).

1

4. Venue is proper in accordance with 28 U.S.C. § 1391(b)(2).

## II. PARTIES

5. Plaintiff is a natural person currently residing within this Court's jurisdiction at 5844 Buckhannon Street in Dublin, Ohio.

6. Plaintiff was and is a **consumer** within the meaning of the FDCPA at 15 U.S.C. § 1692a(3).

7. Kaman & Cusimano, LLC ("K&C") is a debt collector organized with its principal place of business in the State of Ohio.

8. K&C was and is a **debt collector** within the meaning of the FDCPA at 15 U.S.C. § 1692a(6).

9. K&C acquired its interest in the alleged debt after the alleged default.

10. At all relevant times, K&C treated the alleged debt as if it was in default since the date it was acquired by K&C.

11. K&C regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

12. K&C uses instrumentalities of interstate commerce or the mails in its business the principal purpose of which is the collection of debts.

## III. FACTUAL ALLEGATIONS

13. Ms. Gao incorporates all other paragraphs in this Complaint by reference as though fully written here.

14. Ms. Gao resides at a property located at 5844 Buckhannon Street in Dublin, Ohio (the "Property").

15. Ms. Gao is required to pay homeowners' association ("HOA") dues for the Property on a monthly basis.

16. Ms. Gao made regular monthly payments by autopayment before her HOA management company changed.

17. The obligation to pay the HOA dues for the Property and all monies allegedly due and owing to the HOA is and was a **debt** as defined in 15 U.S.C. § 1692a(5).

18. In January 2019, Ms. Gao was informed by her HOA that she did not pay Elite Management Services Inc. ("EMS") her HOA dues. This is the first time Ms.Gao was notified that EMS had taken over management of Ms. Gao's HOA.

19. On January 25, 2019, after receiving notice that the management of her HOA had changed, Ms. Gao requested to set up an autopayment for her HOA dues to EMS.

20. EMS refused to set-up an auto payment.

21. On or around April 30, 2019, Kaman & Cusimano, LLC ("K&C") sent Ms. Gao a letter ("April 2019 letter") demanding payment of $467.50. Exhibit 1.

22. K&C calculated the total of $467.50 to consist of $160 in monthly HOA payments, $50 in late charges, $142.50 in "management processing fees" and $115 for sending a standard form demand letter template printed by a legal assistant or paralegal.

23. Ms. Gao was $160 past due which equals two monthly payments.

24. Despite the relatively small past due amount, K&C exploited the situation by inflating the amount it demanded to $467.50 while threatening further collection activity and additional fees.

25. The $115 and $142.50 charges ($257.50 total) were not bona fide or reasonable and constitute demands for amounts greater than what were due.

26. K&C employs a number of business practices to intentionally and quickly balloon the original debt into a march larger sum.

27. K&C's April 2019 letter directs Ms. Gao to call a telephone number, 614-470-0785, (the "Telephone Number") for questions and assistance.

28. The Telephone Number is listed as belonging to K&C attorney, Magdalena E. Myers.

29. When dialed, the Telephone Number to nowhere plays a pre-recorded message that ends abruptly without notice or warning that the consumer will be recorded after the beep.

30. The Telephone Number leads to a voicemail box that is regularly ignored by K&C.

31. The Telephone Number provided does not put consumers in contact with the attorney identified in the letter or any real person.

32. After receiving the April 30, 2019 letter, Ms. Gao called the HOA to discuss her account and the HOA refused to talk to her directing her to K&C.

33. Ms. Gao called the Telephone Number provided in the letter to get into contact with K&C to resolve the debt.

34. Because the Telephone Number is not a phone line where Ms. Gao could talk to a real person.

35. Ms. Gao left a message on the Telephone Number.

36. On or about May 17, 2019, Ms. Gao still had not received a return call from K&C.

37. Ms. Gao sent K&C a debt dispute letter seeking a solution for her account.

38. Between May 21 and June 3, 2019, Ms. Gao paid $400 towards her HOA account to try to get rid of the threats of further collection action and increasing charges.

39. K&C added $257.50 in fees for sending the April 2019 letter making Ms. Gao's $400 payment insufficient to satisfy the debt.

40. K&C and EMS continued to add late charges to the account.

41. On or around June 25, 2019, K&C responded to Ms. Gao's debt dispute letter stating that Ms. Gao owed an additional $252.50 as of June 10, 2019 and demanded payment to avoid further collection action. Exhibit 2.

42. The June 25, 2019 letter stated that Ms. Gao's letter disputing the alleged debt was forwarded to the board.

43. The June 25, 2019 letter again directed Ms. Gao to call the Telephone Number.

44. Ms. Gao continued paying her $80 a month HOA dues in July and August of 2019 while simultaneously trying to reach someone at K&C.

45. Ms. Gao never got a return call.

46. On or about August 2019, Ms. Gao found another number for K&C was able to speak with a legal assistant who informed Ms. Gao that her matter was still pending a decision by the HOA board.

47. Ms. Gao made her September 2019 HOA payment timely but EMS and K&C still charged her late fees.

48. On September 17, 2019, Ms. Gao sent another letter to K&C attempting to settle the matter and avoid further collection action and charges.

49. Ms. Gao received no response to her request to settle.

50. On September 30, 2019, K&C executed a lien against Ms. Gao's property and charged her an additional $270 in legal fees. Exhibit 3.

51. The lien was recorded on October 8, 2019, and Ms. Gao received notice sometime later that month.

52. The lien demanded a larger dollar amount than what Ms. Gao actually owed to her HOA due to excessive and unauthorized fees and charges.

53. On October 29, 2019, Ms. Gao contacted K&C and asked for a response to her September 17, 2019 letter.

54.  K&C requested 24 to 48 hours to get Ms. Gao a response.

55. K & C did not respond to Ms. Gao within 48 hours.

56. Ms. Gao called again on October 31, 2019, but K&C flagged her number and did not permit Ms. Gao to speak to anyone other than the receptionist who sent her to voicemail.

57. Ms. Gao was forced to hire an attorney to get in contact with K&C to obtain debt validation information and a formal payoff quote.

58. On or around November 5, 2019, after a request for a payoff by Ms. Gao's counsel, K&C sent Ms. Gao a formal payoff quote. Exhibit 4.

59. The November 5, 2019 letter provided the Telephone Number under the attorney's name.

60. The November 5, 2019 letter also identified two different address for Ms. Gao to send payment.

61. The identification of 2 different addresses is misleading as to where to send payment.

62.  In order to prevent further fees and a possible foreclosure action on her home, Ms. Gao paid $814 which was the amount of money requested by K&C to release the lien.

63. Ms. Gao sent $814 by cashiers' check on November 9, 2019.

64. The $814 cashiers' check was deposited on November 12, 2019.

65. Ms. Gao did not receive a refund for any portion of the payment.

66. The lien was released on November 22, 2019.

67. K&C demanded payments which included charges, penalties and amounts not authorized under the declarations governing the HOA.

68. K&C demanded amounts that were not owed by Ms. Gao.

69. K&C made misleading statements regarding the amount of the debt, where to pay the debt, how to pay the det, and how to get into contact with someone to arrange payment.

70. K&C mislead Ms. Gao promising a response when it had no intention of getting back to her.

71. K&C stonewalled and obstructed Ms. Gao's efforts to resolve the alleged debt so that K&C could continue charging Ms. Gao additional amounts

72. K&C stonewalled and obstructed Ms. Gao's efforts to resolve the alleged debt so that K&C could cause a foreclosure action on Ms. Gao's home to make significant profit on approximately $160 in unpaid HOA dues.

73. The statements and demands made in the K&C letters and during phone calls mischaracterized the amount and legal status of the alleged debt.

74. At all relevant times, K&C treated Ms. Gao as if she was in default.

75. As a result of the K&C's conduct, Ms. Gao suffered emotional distress, including anxiety, stress, and sleepless nights.

76. Ms. Gao suffered increased anxiety, worry and concern upon receipt of the letters and during her phone calls to K&C that her house would end up in foreclosure due to the ever-increasing demands and issues with communication.

77. Ms. Gao suffered increased anxiety, worry and concern upon realizing that K&C had provided her a phone number to nowhere to get into contact with them and further stress and anxiety when K & C continued to evade her communications to resolve the debt.

78. Ms. Gao's anxiety, anger, and stress level were exacerbated when K&C filed a lien immediately after she had reached out to resolve the debt and K& C had ignored her.

79. Ms. Gao was forced to hire an attorney in order to even communicate with K&C to get up to date figures on the amount K&C demanded to prevent foreclosure.

## IV. FIRST COUNT – FDCPA VIOLATIONS AGAINST K&C

80. Ms. Gao incorporates all other paragraphs in this Complaint by reference as though fully written here.

81. K&C's actions as described herein, violate the Fair Debt Collection Practices Act ("FDCPA") at 15 U.S.C. § 1692 *et seq.*

82. K&C attempted to collect a debt when it knew or should have known that the that the debt was not valid, authorized, or accurate.

83. K&C falsely represented the character, amount, legal status, and the services rendered related to the alleged debt in violation of 15 U.S.C. § 1692e(2)(A) and (B).

84. K&C falsely represented the character, amount, and legal status of the debt in violation of 15 U.S.C. § 1692e(10).

85. K&C violated the FDCPA at 15 USC §1692e and §1692e(3) and e(10) by providing a phone number under its attorneys' names that goes to a number not associated with any attorney.

86. K&C violated the FDCPA at 15 USC §1692e and §1692e(10) by directing consumers to call a phone number that is simply a long winded pre-recorded message that then leads to a voicemailbox designed to record consumers without giving them prior notice.

87. K&C's actions described herein are unfair and/or unconscionable in violation of 15 U.S.C. § 1692f including specifically §1692f(1) and f(5).

88. K&C's actions described herein are neither authorized nor permitted by law in violation of 15 U.S.C. § 1692f.

89. K&C's actions described herein violate 15 USC §1692g(b) for failure to cease collection activity for 30 days and obtain a verification of the debt after Ms. Gao disputed the debt.

90. K&C's actions described herein violate 15 USC §1692g by charging Ms. Gao and collecting from Ms. Gao $257.50 to notify her of her right to dispute the debt under the FDCPA.

91. K&C's actions caused Ms. Gao severe emotional distress, anxiety and worry.

92. Ms. Gao's emotional distress was caused by the K&C's improper threats, demands, and violations of the FDCPA.

93. K&C's actions forced Ms. Gao to obtain legal counsel and incur expenses and fees to bring this current action and prevent K&C from continuing its pursuit of this invalid debt and amounts and recover amounts it has unjustly obtained.

94. Therefore, K&C is liable to Ms. Gao under this Count for its FDCPA violations in an amount equal to or greater than: actual damages of at least $25,000, 15 U.S.C. 1692k(a)(1); statutory damages in an amount up to $1,000, 15 U.S.C. 1692k(a)(2)(A) per Plaintiff; and costs of this action and attorney's fees, including pursuant to 15 U.S.C. 1692k(a)(3).

## V. SECOND COUNT – CSPA VIOLATIONS AGAINST K&C

95. Ms. Gao incorporates all other paragraphs in this Complaint by reference as though fully written here.

96. K&C is a person engaged in the business of effecting or soliciting consumer transactions.

97. K&C is a Supplier within the meaning of R.C. § 1345.01(C) as it is a seller engaged in the business of effecting or soliciting consumer transactions.

98. Ms. Gao is a Consumer within the meaning of R.C. § 1345.01(D).

99. The HOA fees covers property used by Ms. Gao primarily for personal, family or household use.

100. K&C's actions constitute unfair, deceptive and unconscionable acts or practices in connection with a consumer transaction in violation of the Ohio CSPA.

101. There are rules, written statements, and interpretations adopted or used by the Ohio Attorney General made available for public inspection that detail specific acts or practices that violate R.C. 1345.02, 1345.03, or 1345.031 of the CSPA.

102. K&C's acts or practices are the same acts or practices previously identified in the public inspection files published by the Ohio Attorney General as specific acts or practices that violate the CSPA.

103. All K&C's activities related to Ms. Gao were done knowingly as defined by the CSPA.

104. Based on K&C's violations of the CSPA, Hunter is liable to Ms. Gao for her actual damages trebled and her attorney fees. K&C is also liable to Ms. Gao for at least $5,000.00 in non-economic damages pursuant to R.C. § 1345.09(B) and that amount is subject to trebling. Ms. Gao seeks the maximum statutory, economic, non-economic, and treble damages related to her claims along with his reasonable attorney fees.

## IX. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully request that this Court:

A. Assume jurisdiction of Plaintiff's claims;

B. Grant judgment in favor of Plaintiff on her claims;

C. Grant Plaintiff the maximum damages she seeks on her counts, including the maximum statutory damages available under each claim where statutory damages are available, and

the maximum economic and non-economic damages available, including actual, emotional, general, and other damages;

D. Award Plaintiff the costs of this litigation, including filing fees and costs;

E. Award Plaintiff her attorney's fees;

F. Award such other relief as the Court deems appropriate.

Dated January 2, 2019

                                              Respectfully Submitted,
Kohl & Cook Law Firm, LLC

/s/ *Timothy J. Cook*
Timothy J. Cook (0093538)
Sean M. Kohl (0086726)
*Attorneys for Plaintiff*
1900 Bethel Rd.
Columbus, OH  43022
(614) 763-5111 PH
(937) 813 6057 FAX
timothy@kohlcook.com

## JURY TRIAL DEMANDED

Plaintiffs respectfully request a jury trial on all triable issues.

/s/ *Timothy J. Cook*
Timothy J. Cook (0093538)